**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ALBERT G. FRACCOLA JR., Individually and**
**as 50% Shareholder, Officer, and**
**Director of 1st Choice Realty, Inc.,**

                               **Plaintiff,**

      **vs.**                                   **6:15-CV-00847**
                                           **(MAD/TWD)**

**JOHN W. GROW in his Individual and Official**
**Capacity as then New York State Supreme Court**
**Justice; JOHN DOE(s) and/or RUBY POE(s), in**
**their Individual and Official Capacity,**

                              **Defendants.**

_____

**APPEARANCES:**                         **OF COUNSEL:**

**ALBERT G. FRACCOLA**
14 Wadsworth Road
New Hartford, New York 13413
Plaintiff, _pro se_

**NEW YORK STATE**              **TIFFINAY M. RUTNIK, ESQ.**
**ATTORNEY GENERAL**
120 Broadway
New York, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

_Pro se_ plaintiff, Albert G. Fraccola ("Plaintiff"), on behalf of himself and 1st Choice

Realty, Inc. ("1st Choice"), commenced this action against John W. Grow ("Defendant"), a retired

New York Supreme Court Justice, and unnamed John Does and/or Ruby Poes. Plaintiff asserts

twelve causes of action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983,

the New York State Human Rights Law, the New York State Constitution, and God's Natural

Rights. Dkt. No. 1 at ¶¶ 61-94. Plaintiff seeks compensatory and punitive damages for the injury

and harm caused by Defendant, totaling $20,000,000, as well as declaratory and other equitable

relief. *See id.* at 26-27.

Currently pending before the Court is Defendant's motion to dismiss, *see* Dkt. No. 7, to

which Plaintiff submitted a fifty-five page memorandum in opposition, *see* Dkt. No. 8.

## II. BACKGROUND

In 2005, Defendant presided over a case brought by Plaintiff against Phyllis Fraccola in

New York State Supreme Court, Oneida County. Dkt. No. 1 at ¶ 19. This suit concerned the

unlawful diversion of assets from one corporation, owned jointly by Plaintiff and Phyllis

Fraccola, to another corporation, which was wholly owned by Phyllis Fraccola. *Id.* Plaintiff

reached a settlement with Phyllis Fraccola to resolve this issue and stenographically recorded

their agreement in the presence of Defendant's law clerk on February 18, 2005. *See* Dkt. No. 8-3.

On July 28, 2005, Defendant allegedly so-ordered this settlement stipulation ("the so-ordered

stipulation") at the *ex parte* request of Phyllis Fraccola's attorney. Dkt. No. 1 at ¶ 22.

Plaintiff has already attempted to challenge the so-ordered stipulation through numerous

judicial proceedings. In May of 2008, Plaintiff challenged the transfer of two deeds by Phyllis

Fraccola pursuant to the so-ordered stipulation in Oneida County Supreme Court. *Id.* at ¶ 27.

Hon. Samuel D. Hester ruled that Plaintiff was estopped from challenging the deed transfers

because they were made pursuant to the so-ordered stipulation. *Id.* at ¶ 28. On February 4, 2011,

Plaintiff once again challenged the deed transfers in Oneida County Supreme Court. *Id.* at ¶ 33.

Judge Hester dismissed this case, again finding that the transfers were made pursuant to the terms

of the so-ordered stipulation. *Id* at ¶ 40. On November 5, 2012, Plaintiff filed suit in the Court of

Claims, alleging that the State of New York violated his due process and equal protection rights by the so-ordered stipulation. *Id.* at ¶¶ 43-44. This case was also dismissed. *Id.* at ¶¶ 46-47. On January 14, 2014, Plaintiff returned to Oneida County Supreme Court with a motion pursuant to CPLR § 5015(a)(4) to set aside the so-ordered stipulation. *Id.* at ¶ 50. Judge Hester again denied this motion and Plaintiff appealed to the Appellate Division, Fourth Department on March 19, 2014. *Id.* at ¶¶ 51, 52. On January 2, 2015, the Fourth Department denied Plaintiff's appeal under the doctrines of res judicata and collateral estoppel. *Id* at ¶¶ 52, 53. Plaintiff commenced the instant action on July 10, 2015 asserting that Defendant improperly acted without a motion on notice in so-ordering the stipulation. *Id.* at ¶¶ 9, 38.

### III. DISCUSSION

**A.    Standard of Review**

*1. Rule 12(b)(1) Motion to Dismiss*

When a party moves to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For purposes of such a motion, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true . . . ." *Id.* (internal citations omitted). Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d

129, 131 (2d Cir. 1998)); *see also State Empls. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

### *2. Rule 12(b)(6) Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556

4

U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000)).

**B.    Judicial Immunity**

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted), *superseded by statute*, Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, *as recognized in Peters v. Noonan*, 871 F. Supp. 2d 218 (W.D.N.Y. 2012). The 1996 Congressional amendments to Section 1983 further barred injunctive relief and provided that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat.

5

3847, 3853 (1996); *see also Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Therefore, a

judge is immune from all forms of suit unless he or she has acted either beyond the judge's

judicial capacity, or "in the complete absence of all jurisdiction." *Bobrowsky v. Yonkers*

*Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (quoting *Mireles*, 502 U.S. at 11, 112 S.

Ct. 286).

In determining whether or not a judge acted in the "clear absence of all jurisdiction," the

judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome

when the 'judge clearly lacks jurisdiction over the subject matter.'" *Ceparano v. Southampton*

*Justice Court*, 404 Fed. Appx. 537, 539 (2d Cir. 2011) (quoting *Maestri v. Jutkofsky*, 860 F.2d 50,

53 (2d Cir. 1998)). "Whether a judge acted in a 'judicial capacity' depends on the 'nature of the

act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on]

the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Id.*

(quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). "Further, if the judge is performing in

his judicial capacity, the 'judge will not be deprived of immunity because the action he took was

in error, was done maliciously, or was in excess of his authority; rather, he will be subject to

liability only when he has acted in the "clear absence of all jurisdiction."'" *Id.* (quotation and other

citation omitted). "Judges are not, however, absolutely 'immune from liability for nonjudicial

actions, *i.e.*, actions not taken in the judge's judicial capacity.'" *Bliven*, 579 F.3d at 209 (quotation

and other citation omitted).

Plaintiff argues that Defendant's so-ordering of the stipulation after an *ex parte* meeting

with opposing counsel undermines the judicial character of the act. *See* Dkt. No. 8 at 22.

However, "the informal and *ex parte* nature of a proceeding" does not deprive "an act otherwise

within a judge's lawful jurisdiction" of its judicial character. *Forrester v. White*, 484 U.S. 219,

227 (1987) (citing *Stump*, 435 U.S. at 363 n.12).  Thus, Defendant's actions were judicial in

nature so long as the *ex parte* proceeding was otherwise within his lawful jurisdiction.  *See*

*Zeigler v. New York*, 948 F. Supp. 2d 271, 283 (N.D.N.Y. 2013) (citing *Forrester,* 484 U.S. at

227).  Here, Defendant had jurisdiction over Plaintiff's case against Phyllis Fraccola, and the so-

ordered stipulation settled that case.  Dkt. No. 8-3 at 2-5.  The settlement record expressly states

that Defendant had jurisdiction to so-order the stipulation: "Based upon the consents of the parties

and the stipulation as placed on the record, if an order is necessary for any of the stipulations that

have been placed on the record, . . . Judge Grow will continue his jurisdiction in this case."  *Id.* at

10.  As such, Defendant's so-ordering of the stipulation arose directly from Plaintiff's case against

Phyllis Fraccola, which Defendant presided over, and entitles him to judicial immunity for this

action.  *See Bliven*, 579 F.3d at 210 ("[T]he Supreme Court generally concluded that acts arising

out of, or related to, individual cases before the judge are considered judicial in nature").

Accordingly, all causes of action against Defendant surrounding the so-ordered stipulation are

dismissed.


**C.**     **The Rooker–Feldman Doctrine**

"The *Rooker–Feldman* doctrine provides that the lower federal courts lack subject matter

jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or

modification of a state court judgment."  *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.

1998).  "Such jurisdiction is lacking because within the federal system, only the Supreme Court

may review a state court judgment."  *Id.*

The *Rooker–Feldman* doctrine "is confined to cases of the kind from which the doctrine

acquired its name: cases brought by state-court losers complaining of injuries caused by state-

court judgments rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*,

544 U.S. 280, 284 (2005).  In light of *Exxon Mobile*, the Second Circuit held that "there are four

'requirements' that must be met before the *Rooker–Feldman* doctrine applies[.]" *Green v.*

*Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted).  The requirements are as follows:

> First, the federal-court plaintiff must have lost in state court.
> Second, the plaintiff must 'complain[] of injuries caused by [a]
> state-court judgment[.]'  Third, the plaintiff must 'invite district
> court review and rejection of [that] judgment[].'  Fourth, the state-
> court judgment must have been 'rendered before the district court
> proceedings commenced' — i.e., *Rooker–Feldman* has no
> application to federal-court suits proceeding in parallel with
> ongoing state-court litigation.

*Id.* (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).  "[T]he

first and fourth requirements 'may be loosely termed procedural,' while the second and third

requirements 'may be termed substantive.'"  *Id.* (quotation omitted).

Plaintiff's instant action fulfills all four elements of the *Rooker–Feldman* analysis.  First,

Plaintiff lost similar state court actions on at least five occasions in New York State Supreme

Court and the Court of Claims.  *See* Dkt. No. 1 at ¶¶ 27, 28, 33, 46-48, 52-53.  Second, Plaintiff

alleges that he has been injured from these state court losses, including loss of property, physical

ailments, and psychological harm.  *Id.* at ¶¶ 54, 55.  Third, Plaintiff's instant action seeks

"[d]eclaratory relief that any and all other State of New York Judges while acting 'Under The

Color of Law,' relevant to Defendants [so-ordered stipulation], did so lacking in 'Subject Matter

Jurisdiction.'"  *Id.* at 26.  Granting this requested relief would effectively void every judgment of

the Supreme Court and Court of Claims previously decided on this issue.  Lastly, Plaintiff's

appeal of his final state court action was denied on January 2, 2015, well before Plaintiff

commenced the instant action on July 10, 2015.  *Id.* at ¶¶ 52, 53.  Therefore, the Court lacks

subject matter over Plaintiff's action pursuant to the *Rooker–Feldman* Doctrine. *See*

*Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998).

**D.     Supplemental Jurisdiction**

As all of Plaintiff's federal causes of action must be dismissed, the Court declines to

exercise supplemental jurisdiction to the extent that any state law claims remain. *See* 28 U.S.C. §

1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if

. . . the district court has dismissed all claims over which it has original jurisdiction").  Moreover,

Plaintiff has failed to plead sufficient facts to establish any claims against John Doe(s) and/or

Ruby Poe(s).  Accordingly, these claims must also be dismissed.  *See Valade v. City of New York*,

949 F. Supp. 2d 519, 532 (S.D.N.Y. 2013) (quotation omitted) ("Where a plaintiff 'has had ample

time to identify' a Doe defendant but gives 'no indication that he has made any effort to discover

the [defendant's] name,' the plaintiff 'simply cannot continue to maintain a suit against' the [Doe

defendants]").

**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED** in its entirety; and the Court

further

**ORDERS** that Plaintiff's complaint is **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 27, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge